IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CR-64-2-BR

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMILS BARNARD DREW | ORDER |

This matter is before the court on defendant's motion for compassionate release. (DE # 193.)

In 2010, defendant pled guilty to armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 2 and 2113 and possession of a firearm in furtherance of a crime of violence and aiding and abetting the same in violation of 18 U.S.C. §§ 2 and 924(c). At sentencing, he was deemed a career offender. The court sentenced him to 113 months imprisonment on the armed robbery offense, representing a 25% downward departure from the low end of the applicable guideline range, and 84 months imprisonment, the statutory mandatory minimum term, to run consecutively, on the § 924(c) offense, for a total imprisonment term of 197 months. Defendant did not appeal.

In January 2021, defendant filed the instant motion *pro se*. Pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent defendant for purposes of such a motion. Appointed counsel filed a redacted memorandum in support of defendant's motion with supporting exhibits, (DE # 197), and an unredacted version under seal,

(DE # 198).[1] The government filed a response in opposition. (DE # 200.) Defendant filed an amended reply with supporting exhibits. (DE # 202.) The following day, in response to the court's order, the government filed defendant's sentence computation and inmate discipline data. (DE # 203.) Recently, defendant filed a notice to update the court on defendant's medical care along with a motion to seal his supporting medical records. (DE ## 206-08.)

Defendant seeks a reduction in his sentence to time served or to serve the remainder of his custodial sentence on home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[2] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed

---

[1] The parties have freely discussed defendant's medical conditions in publicly filed documents, and therefore, there is no need to file a redacted version of this order.
[2] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

by defendants under this statute.³  United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020).

"[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'"  Id. at 284 (citation omitted) (emphasis added).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors.   18 U.S.C. § 3582(c)(1)(A).

> Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner."

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

Here, the government does not dispute that defendant has satisfied § 3582(c)(1)(A)'s threshold requirement.   (Cf. Resp., DE # 200; see Mem., Exs. 2 & 3, DE # 197-2 to -3); see also United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) ("[T]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the [BOP] to bring a motion on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court.").   Therefore, the court will consider the merits of defendant's motion.

Defendant requests that the court reduce his sentence based on his medical issues in light of COVID-19 and his incarcerated status.   (Mem., DE # 197, at 4-8; Am. Reply, DE # 202, at 2-

---

³ The policy statement contained in U.S.S.G. § 1B1.13 "addresses only BOP-filed motions."  United States v. High, 997 F.3d 181, 186 (2021).   Nonetheless, it "'remains helpful guidance even when motions are filed by defendants.'"  Id. (quoting McCoy, 981 F.3d at 282 n.7).   Relevant here, "[w]ith respect to medical conditions, [extraordinary and compelling] reasons include that 'the defendant is suffering from a terminal illness' or 'the defendant is . . . suffering from a serious physical or medical condition.'"  Id. (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii)) (alterations omitted).

3

3, 6-8.) He further argues that a reduction is warranted because he has served the majority of the sentence imposed; his involvement in criminal activity is attributable to his youth and untreated substance abuse issues; his-post sentencing conduct and release plan; and a change in sentencing law makes him no longer a career offender. (Mem., DE # 197, at 8-12; Reply, DE # 202, at 2-6.)

The government opposes any reduction. Although the government acknowledges that defendant has COVID-19 risk factors, it contends defendant's recovery from infection with the virus nullifies any reason for his release and his medical conditions can be appropriately managed within the BOP. (Resp., DE # 200, at 19-22.) It argues defendant's criminal history, the nature and circumstances of the instant offenses, and the efforts BOP is undertaking to protect inmates from COVID-19 weigh against defendant's release. (Id. at 23-24.)

"COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." High, 997 F.3d at 185. "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)), aff'd, 992 F.3d 326 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021). The Centers for Disease Control and Prevention's ("CDC") list of risk factors for COVID-19 complications also informs the court's evaluation. Everett v. United States, No.

4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant is 35 years old and has Type 2 diabetes,[4] hypertension, a history of smoking cigarettes and marijuana, and high cholesterol. (PSR, DE # 130, ¶¶ 36, 38; Mem., Ex. 5, DE # 198-2; Notice, Ex. 1, DE # 207-1, at 25.) He had COVID-19 in February 2021 and several months later was still experiencing the virus' effects, such as loss of taste and smell. (Mem., Ex. 6, DE # 198-3, Notice, Ex. 1, DE # 207-1, at 8.) Defendant's diabetes is poorly controlled. When an endocrinologist recently evaluated defendant, he inquired about the use of an insulin pump with a continuous glucose monitoring system, (Notice, Ex. 1, DE # 207-1, at 26), which his treatment providers agree would be beneficial to his treatment, (see id. at 5, 11, 18). The endocrinologist explained to defendant that currently the BOP "is not equipped to handle his request" because staff would need to be trained in maintaining the equipment. (Id.) The doctor did not rule out the possibility that defendant could eventually obtain such equipment while incarcerated; but given his anticipated release date, the doctor recommended that defendant seek to obtain it after he was no longer incarcerated. (See id.) In addition to equipment, defendant has requested a diabetes mellitus diet, but his treatment providers have not ordered it. (See id. at 15, 19, 26.)

According to the CDC, having Type 1 or Type 2 diabetes, being a former cigarette smoker, and possibly having hypertension can make one more likely to get severely ill from COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 24, 2022). "The risk of severe COVID-19 increases as the

---

[4] Some documents refer to defendant as having Type 1 diabetes. For purposes of the court's analysis, the type of diabetes defendant has is irrelevant.

number of underlying medical conditions increases in a person." Id.

At FCI Butner Medium II, where defendant is incarcerated, 50 inmates and 15 staff are positive for COVID-19. BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Jan. 24, 2022). In the past two weeks, the number of inmates positive has nearly quadrupled, and the number of staff positive has nearly doubled. (Compare id. with Notice, Ex. 2, DE # 206-1, at 2 (reporting 13 inmates and 9 staff as positive).) Approximately 91% of the inmates at the entire Butner complex are fully inoculated. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Jan. 24, 2022). Although defendant has been vaccinated, (Notice, Ex 1, DE # 207-1, at 5), breakthrough infections of COVID-19 among fully vaccinated persons remain, particularly with the highly contagious Omicron variant, see CDC, Omicron Variant: What You Need to Know, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 25, 2022).

Considering collectively defendant's health and the conditions at FCI Butner Medium II, the court finds that defendant has shown extraordinary and compelling reasons to warrant further consideration of his motion. The court turns its attention to the applicable § 3353(a) factors.

Prior to the instant offenses, defendant had been convicted of three felonies: assault with a deadly weapon with intent to kill; possession of a firearm by a felon; and engaging in a riot by possession of a dangerous weapon. (PSR, DE # 130, ¶¶ 22-23.) Defendant committed the first felony when he was 18 years old and the latter two when he was 19 years old. (Id.) Less than one year after he was released from state prison, defendant committed the instant offenses. (Compare id. ¶ 9 with ¶ 23.) According to defendant, his criminal "behavior was related to his

6

untreated substance abuse issues." (Mem., DE # 197, at 9; see also Reply, DE # 202, at 4.) He claims he is now sober and wants to remain that way. (Id.)

Regarding the instant offenses, defendant planned to rob a bank in Henderson, North Carolina and stole a car to use to get away from the bank. (PSR, DE # 10, ¶ 12.) Defendant entered the bank with a loaded firearm, pointed it twice at a teller's head, and threatened to kill the tellers. (Id. ¶¶ 9, 12.) He and his co-defendant stole $36,000 from the bank. (Id. ¶ 9.) A victim has informed the government that s/he opposes defendant's release. (Resp., DE # 200, at 3 n.1.)

Defendant has served 139 months or about 75% of the sentence imposed (with good time credit). (See Resp., Ex. 1, DE # 203-1.) Defendant contends, and the government does not dispute, that if he were sentenced today, he would not be a career offender.[5] As a result, his guideline imprisonment range on the armed robbery offense would be 77 to 96 months; the "range" for the § 924(c) offense remains the statutory mandatory minimum term, 84 months. If the court were to impose its sentence today and give defendant the benefit of a 25% downward departure from 77 months on the armed robbery offense, the total term of

---

[5] The Probation Officer who prepared defendant's presentence report identified the following 2006 state convictions as predicates supporting the career offender enhancement: assault with a deadly weapon with intent to kill and engaging in a riot by possession of a dangerous weapon. (PSR, DE # 130, at 16.) It does not appear defendant could have been imprisoned more than 12 months for the engaging in a riot conviction. See N.C. Gen. Stat. §§ 14-288.2(c)(2) (1994) (specifying engaging in a riot by possession of a dangerous weapon is a Class H felony), 15A-1340.17(c), (d) (1997); (see also PSR, DE # 130, ¶ 23 (showing defendant was sentenced to the range of 8 to 10 months imprisonment).) If not, then the conviction does not qualify as a "felony" for the career offender guideline. See United States v. Shuff, 470 F. App'x 158, 162 (4th Cir. 2012) (per curiam) (applying United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), and holding the defendant, who was convicted of a Class H felony, had a prior record level of III, and was sentenced in the presumptive range, could not have been imprisoned for a term exceeding one year and therefore the conviction was not a proper predicate for the career offender guideline). Also, it is doubtful that offense would qualify as a "crime of violence" under the career offender guideline's force clause. See Samuels v. United States, No. 3:16-CV-453-GCM, 2017 WL 4583902, at *4 (W.D.N.C. Oct. 13, 2017) (holding "North Carolina felony riot is not a 'violent felony' under [the Armed Career Criminal Act's ("ACCA")] use-of-force clause"); see also United States v. Gattis, 877 F.3d 150, 155 (4th Cir. 2017) ("[T]he force clause of the [ACCA] [] is identical to and applied the same as the force clause in [the career offender guideline]." (citations omitted)).

imprisonment would be 142 months.

While incarcerated, defendant has taken programming and maintained employment. (Resp., Ex. 9, DE # 197-7.) He has committed eight prohibited acts, three of greatest severity which involved the possession or use of alcohol or drugs. (Id.; Resp., Ex. 2, DE # 203-2.) The last time he was sanctioned was in July 2020 for a minor prohibited act. (Id.)

Upon release, defendant plans to reside with his father and stepmother, (Mem., Ex. 9, DE # 197-7), and they agree that defendant may live with them and that they will support him emotionally and financially, (id., Ex. 12, DE # 197-8). He hopes to obtain a commercial driver's license. (Id., DE # 197, at 10.) He has an offer of employment in food service. (Id. Ex. 12, DE # 197-8.)

Although the court is troubled by defendant's violent criminal history, the court recognizes that defendant was relatively young when he committed the offenses and accepts defendant's representation that they were attributable, at least in part, to his untreated substance abuse issues. The court notes that defendant is subject to a five-year term of supervised release, a condition of which requires him to "participate as directed in a program approved by the probation office for the treatment of narcotic addiction, drug dependency, or alcohol dependency." (J., DE # 79, at 4.) Considering all the circumstances, the court concludes reducing defendant's term of imprisonment to time served and modifying his special conditions of supervised release to include a period of home detention satisfy the goals of sentencing, including reflecting the seriousness of the offenses, imposing sufficient punishment, and deterring crime, and would enable defendant to obtain needed medical equipment and change his diet to improve his health. Accordingly, defendant's motion is ALLOWED.

8

Defendant's sentence of imprisonment as reflected in the judgment dated 8 November 2010 is REDUCED to time served on all counts. Defendant's special conditions of supervision as reflected in that judgment are MODIFIED by the addition of the following condition:

> The defendant shall abide by all conditions and terms of the home detention program until November 30, 2024. The defendant shall be restricted to his residence at all times except for pre-approved and scheduled absences for employment, education, religious activities, treatment, attorney visits, court appearances, court obligations or other activities as approved by the probation officer. The defendant shall submit to Radio Frequency monitoring and abide by all program requirements, instructions, and procedures provided by the supervising probation officer. The defendant shall pay for location monitoring services as directed by the probation officer.

All other provisions of the 8 November 2010 judgment shall remain in effect. The BOP may delay defendant's release up to 14 days for quarantine and/or administrative reasons.

Defendant's motion to seal the medical records filed in support of his notice to update the court on his medical care is ALLOWED.

This 26 January 2022.

_____
W. Earl Britt
Senior U.S. District Judge